**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

and

STELLA BRASHER, as Personal Representative
of the Estate of TOMMY GENE BRASHER,

    Plaintiff-Intervenor,

    vs.                                             No. CIV-94-1473 LH/WWD

MTS CORP., d/b/a SUPERCUTS,
TMS CORP., d/b/a SUPERCUTS,
THOMAS B. STRIBLING, SR.,
MARTHA G. STRIBLING, and
JOEL D. STRIBLING,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

On September 4, 1996, the jury returned a verdict in favor of Stella Brasher, as Personal Representative for the Estate of Tommy Gene Brasher (hereafter "Brasher"), awarding her $5,000 in compensatory damages and $1,000 in punitive damages. This matter is before the Court on Plaintiffs' Motion for Award of Attorney Fees and Expenses (Docket No. 421), filed on August 29, 1997, pursuant to 42 U.S.C. §§ 2000e-5(k) and 12205, and D.N.M. LR-Civ. 54.5.[1] The Court has reviewed all pertinent pleadings and the relevant authorities. Defendants argue that Brasher is not

---

[1] This Memorandum Opinion and Order shall address the issue of allowable attorney fees only. All cost issues will be covered in a subsequent ruling by the Court.

1

entitled to any fee award, for many reasons, the paramount of which is that Mr. Brasher's estate's had limited monetary success at trial. The Court, in its discretion, has already concluded that Mr. Brasher's estate was a prevailing party in this litigation, entitled to fees and expenses,[2] and now finds that it reasonably incurred attorney fees in the amount $70,748.30, plus gross receipts taxes in the amount of $4,421.76, for a total award of $75,170.06.

## I. Discussion

Pursuant to 42 U.S.C. § 2000e-5(k), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."[3] In this case, Mr. Brasher's estate prevailed on one of his two federal claims, possibly on the state claim of retaliatory discharge, *see* Memorandum Opinion and Order, Docket No. 417 at 2, recovered only nominal damages, and obtained the injunctive relief sought.

A prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *See Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 89 at n. 1 (1989)). Thus, the relevant inquiry is whether any special circumstances would render such an award unjust and, if not, what constitutes a reasonable fee.

A court will generally determine what fee is reasonable by first calculating the lodestar – the total number of hours reasonably expended, multiplied by a reasonable hourly rate – and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome. *See*

---

[2] *See* Memorandum Opinion and Order, Docket No. 417.

[3] Cases awarding fees under Section 1988 are applicable to fee awards under Title VII, as both provide for "prevailing party" fee awards. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 at n. 7 (1983).

2

*Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983), *cited in Phelps v. Hamilton*, 120 F.3d 1126 (10th Cir. 1997). In cases which result in a merely technical or de minimus award, however, a court may "lawfully award low fees or no fees" without calculating a lodestar. *Farrar v. Hobby,* 506 U.S. 103, 115 (1992). Thus, at this juncture, it is imperative that this Court decide whether the result achieved was a merely technical or de minimus award.

Congress has pointed out that "[a]ll of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." S. Rep. No. 1101, 94TH CONG., 2D SESS., at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910. As noted recently by the Tenth Circuit, in view of this congressional intent, the "district court's discretion to deny fees to a prevailing party is quite narrow." *Phelps v. Hamilton, 120 F.3d 1126,* (citing *Wilson*, 819 F.2d at 951)(other citations omitted.) The case of *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1474 (10th Cir. 1985) noted that "there are few cases denying attorney fees to a prevailing party as unjust under § 1988," and "[a] strong showing of special circumstances is necessary to support a denial."

In analyzing whether this victory is purely technical or de minimis, I have followed the lead of the recent Tenth Circuit *Phelps* case, and have looked for guidance to Justice O'Connor's concurrence in *Farrar v. Hobby,* a case that distills various principles from case law into a three-part test to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees. The "relevant indicia of success" are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation. *Farrar v. Hobby,* 506 U.S. at 121-22.

3

The first and "most critical factor". . . is the "degree of success obtained." Id. at 114, *citing Hensley,* 461 U.S. at 436. Mr. Brasher's federal claim, contained in Count I of his Second Amended Complaint in Intervention, was that Defendants discriminated and retaliated against him, in violation of the ADA. In conjunction with this claim, Mr. Brasher sought a permanent injunction, back pay, certain other pecuniary damages, including moving expenses and financial costs, pain and suffering, and punitive damages. Mr. Brasher's estate was awarded $5,000 in compensatory damages and $1,000 in punitive damages on his retaliation claim, as well as the injunctive relief he sought. That Mr. Brasher's estate prevailed on a portion of his federal claim under the ADA but not on the majority of his state law claims does not diminish the reasonableness of awarding some attorney's fees commensurate with his legal efforts in bringing the federal claims. *See Phelps*, 120 F.3d at 1130(holding that because plaintiffs did not succeed on the "primary" bad faith claim and were successful on only one of the four underlying claims, thereby obtaining declaratory judgment overturning a statute as being unconstitutionally vague, it was nonetheless reasonable to award some attorney's fees). *See also Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995)(holding that plaintiffs' success on two of their eight challenges to Utah's Abortion Act resulted in success sufficient to award attorney's fees based upon a qualitative assessment of the relative importance of plaintiffs' successes and failures). Based on this precedence, and my knowledge of this case, I conclude that this factor does not weigh in favor of characterizing the Plaintiffs' victory as merely technical or de mimimis.

Furthermore, notwithstanding the limited monetary recovery, the verdict vindicated the violation of Mr. Brasher's civil rights. The damages which Mr. Brasher sought are distinguishable from those in *Farrar*, where the plaintiff sought $17 million and, after ten years of litigation, obtained

a mere $1 in damages and no declaratory or injunctive relief. *Farrar,* 506 U.S. at 107-08. Unlike *Farrar,* this case went to trial approximately twenty months after it was filed and Mr. Brasher's estate's claims for damages were not extravagant. Mr. Brasher's complaint does not state specific dollar amounts and, in his closing argument, the only specific figure mentioned by Mr. Herr was that Mr. Brasher lost backpay of approximately $10,500. Mr. Herr asked the jury to award compensatory and punitive damages and mentioned possible multipliers the jury might use, but made no specific dollar requests for these two elements of damages. Accordingly, it is impossible for this Court to determine exactly what the recovery sought by Mr. Brasher was in terms of a dollar figure. I am unable to meaningfully compare the judgment recovered and the recovery sought, although I do conclude that the $6,000 verdict fell short of what Plaintiffs must have expected and that, in this regard, this verdict constituted a partial and limited success.

I note that in the context of civil rights litigation, several courts have considered the deterrent effect of the litigation to be an important consideration when evaluating the degree of success obtained by a particular plaintiff. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986); *Phelps v. Hamilton*, 120 F.3d at 1132; *see also Koopman v. Water Dist. No. 1 of Johnson County, Kansas,* 41 F.3d 1417, 1420 (10th Cir. 1994), *cert. denied,* ___ U.S. ___, 116 S.Ct. 420 (1995). This effect is discussed extensively below.

For all of these reasons, the Court finds that, while Plaintiffs are not entitled to full reimbursement for attorney's fees and costs, the nominal damage award does not preclude an award of fees in this case.

The second factor of the *Farrar* equation goes beyond the actual relief awarded to examine the extent to which the Plaintiffs succeeded on their theory of liability and the significance of the legal

issue on which the Plaintiffs prevailed.  This is discussed extensively above.  Despite losing on the ADA discrimination claim and the majority of his state claims, Mr. Brasher's estate  prevailed on obtaining a judgment of retaliation as well as injunctive relief.  Mr. Brasher's estate thus succeeded on a "significant issue in litigation which achieves some of the benefit [he] sought in bringing suit."  *See Hensley*, 461 U.S. at 433.

Finally, the third *Farrar* factor for this Court to consider is the public purpose served by the plaintiffs' success.  This factor examines whether the judgment vindicates important rights and deters future lawless conduct, as opposed to merely "occupying the time and energy of counsel, court, and client."  *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring).  In the present case, Mr. Brasher's estate obtained minimal damages and injunctive relief against a corporation that owns eighteen stores in New Mexico and Texas, that now must conduct training.   I believe that the present and future employees of this corporation will benefit from the entry of this injunctive relief.  This case was the first New Mexico case under the ADA for an AIDS disability.  There was extensive media coverage of the  entire process of litigation.  These factors support my conclusion that the combined result of this litigation has been one of deterrence of future unlawful conduct by this sizeable corporation as well as possibly by other New Mexico corporations.

While the success obtained by Plaintiffs was limited, it was not merely technical or de minimus.  It is now incumbent upon this Court to analyze what amount of attorney's fees would be reasonable in light of Plaintiffs' limited success.

### A.  Reasonableness of Attorney's Fees

This Court has discretion to determine the amount of a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

6

To make the initial determination of what amount is a reasonable fee, the Court should take "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.". *Hensley*, 461 U.S. at 433. The product of this multiplication is called the lodestar. The lodestar provides an "objective basis on which to make an initial estimate of the value of a lawyer's services." *Id*. The district court may either accept the lodestar as the reasonable amount to award the prevailing party, or the court may adjust the lodestar upward or downward, depending on the circumstances of the case. There is no precise rule or formula; the court has discretion in making this equitable judgment. *Id.* at 436-37. The trial judge is uniquely qualified to establish the reasonable hourly rate multiplier because he is familiar with the case and the prevailing rates in the community. *Smith v. Norwest Financial Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997). The fee applicant bears the burden of proving he is entitled to an award, of documenting the appropriate hours expended, and of justifying the requested hourly rate. *Id*.

### 1.  Hours Reasonably Expended

To determine the hours Plaintiffs reasonably expended pursuing this action, the Court must examine the reasonableness of total time reported by counsel and the time allotted to specific tasks. *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983). "It does not follow that the amount of time actually expended is the amount of time reasonably expended." *Id.* (citations omitted). The party "who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended [and] the nature and need for the service . . . ." *Hensley*, 461 U.S. at 437 n.12.

The prevailing party must make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecesary." *Hensley*, 461 U.S. at 434. Counsel for Mr.

7

Brasher reports to the Court that they have excluded 635.8 hours from the fee request for hours and expenses that are not related to Mr. Brasher's ADA claims, and because they are redundant or otherwise unnecessary.[4]

Mr. Brasher's estate asks this Court to award fees in the amount of $269,904.00. This exorbitant request includes reimbursement to Mr. Herr for 697.9 attorney hours; reimbursement to Ms. Philips for 1025.4 attorney hours; reimbursement for 47.3 hours of work by other attorneys employed at the Montgomery and Andrews law firm; and reimbursement for 570.2 hours of paralegal and law clerk time. The requested attorney time, 1770.6 hours, would constitute nearly a full work load for an average attorney for an **entire year**, half of the two year period of time between when the case was filed and when it went to trial. The Court is shocked by the excessiveness of this request, especially because this case was prosecuted by the Montgomery and Andrews law firm in conjunction with efforts of co-counsel at the EEOC, a fact that I know spared the privately retained attorneys considerable time and effort. For the reasons that follow, I have significantly reduced Mr. Brasher's counsel's request for fees.

### (a)  Duplicated Efforts and Hours Improperly Billed

Defendants' first complaint about Mr. Brasher's counsel's reimbursement request is that it contains hours for duplicated work. Defendants have highlighted those entries in yellow which they believe reflect duplicated work by counsel and in green those entries they believe reflect the duplicated efforts of paralegals. Defendants contest the reasonableness of the participation of an

---

[4]Counsel for Brasher's estate have deducted fees for defense of defendants' motion for summary judgment on state law claims (341.8 hours); for certain intraoffice conferences (53.3 hours); for arguably nonproductive work or work which arguably duplicates EEOC work (25.6 hours); for in-state travel (116.3 hours); for miscellaneous by attorneys not of record (18.5 hours); for paralegal hours (80.3 hours).

8

EEOC lawyer plus that of one or two Montgomery and Andrews attorneys. Defendants have highlighted in pink those efforts which they consider instances of unnecessary review and revision of work in the time sheets. This latter argument is inconsistent with Defendants' suggestion, discussed below, that the Court reduce Ms. Philips' hourly rate to $95 per hour (which the Court has done), and not reduce the hours submitted by defense counsel for review by Mr. Herr of Ms. Philips' work. Accordingly, the Court will not consider the reductions of items highlighted in pink, insofar as they relate to review and revision of Ms. Philips' work by Mr. Herr.

I have reviewed each entry on each of the 150 pages of time sheets.[5] I am unwilling to delete hours for time spent by either Mr. Herr or Ms. Philips for work in conjunction with the EEOC lawyers; however, in most instances I have not allowed hours for both Mr. Herr and Ms. Philips for this purpose. An overlap of efforts between one of Mr. Brasher's attorneys and those of the EEOC seems reasonable, especially because the Defendants are not being required to pay any fees to the EEOC lawyers and accordingly should not benefit from the participation in this matter by EEOC counsel.

There are many instances of double billing by Mr. Herr and Ms. Philips that strike this Court as excessive however. Duplicated efforts of these two attorneys from the Montgomery and Andrews firm, especially when done in addition to involvement by the EEOC lawyers, seems unwarranted in a great number of pre-trial instances. During the timeframe immediately before and during trial, I allowed a greater incidence of double billing. In those instances where both Mr. Herr and Ms. Philips

---

[5] Although this Court is not required to "identify and justify each disallowed hour" or "announce what hours are permitted for each legal task", *see Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986), *cited in Smith v. Norwest, supra.,* I will enter into the record, as a supplement to this Memorandum Opinion, the timesheets, highlighted by defendants, which reflect my deletions of hours I consider to be excessive.

billed for their time, and it was my judgment that the time for one attorney only was warranted, I subtracted the hours reported for Ms. Philips.

Given the extensive double-billing of Mr. Herr and Ms. Philips that I have allowed, I will disallow the 47.3 hours of time spent on this case by other Montgomery and Andrews lawyers.

I note there is some duplication of efforts of paralegals. I also note that time for paralegals has been billed in the courtroom at times when two Montgomery and Andrews attorneys were also present. The Court determines this is excessive and will be disallowed.

Defendants next complain that many of the hours requested are for what they characterize as unproductive attorney time. On Exhibit 3, they have highlighted in pink those items they consider in this category (preparation of attorney fee agreements, preparation of joint prosecution agreement with EEOC, meeting with law firm executive committee, attendance at press conferences, researching RICO and workers compensation issues, multiple revisions of work, travel time, unsuccessful attempts to reach witnesses, excessive reviewing of medical records, organizing and reviewing files, excessive background reading, obtaining "fingerprinting," and obtaining California criminal records). In many instances, I have incorporated these requested reductions.

Defendants also complain about what they consider unproductive paralegal time and time spent on clerical work. *Ramos* instructs us that the trial court should evaluate whether or not services which are normally part of the office overhead in the community in which the case was tried; if considered part of overhead, such services should be disallowed. *See Ramos*, 713 F.2d at 555. I have reviewed these charges and determined that there are some instances of work so clerical in nature as to be considered part of the office overhead. I have made reductions for these items.

Finally, Defendants argue about vague descriptions on the time sheets of work done.

10

Taking these generally meritorious complaints into account I have made the following adjustments:

Attorney Philips' hours will be reduced by 160.6 hours, from 1025.4 to 864.8. Attorney Herr's hours will be reduced by 72 hours, from 697.9 to 625.9 hours. Paralegal and law clerk time will be reduced by 198.9 hours, from 570.2 to 371.3 hours. Other Montgomery and Andrews lawyer time will be reduced from 47.3 hours to 0.

**2. Reasonable Hourly Rate**

"The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge in the area." *Ramos*, 713 F.2d at 555. The Court should use "prevailing market rates in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895; *see also Beard v. Teska*, 31 F.3d 942, 956-97 (10th Cir. 1994). The attorney's customary rate is a relevant but not conclusive factor. *Ramos*, 713 F.2d at 555. The Court notes that it must not determine a "just" or "fair" price, but rather what the attorney would receive if he were billing a paying client rather than being paid by court order.

Defendants do not dispute Mr. Herr's requested hourly rate of $165 and the Court concludes that this is a reasonable rate for an attorney of Mr. Herr's experience and expertise in this community. Mr. Herr has been in the practice of law since 1969. Mr. Herr's co-counsel, Grace Philips, requests a reimbursement rate of $110 per hour. Ms. Philips has practiced law since 1992. At the time of this litigation, Ms. Philips was a third and fourth-year associate (Philips' Affidavit, Para. 4). Defendants suggest that the Court reduce Ms. Philip's hourly rate to $95 per hour and not engage in a reduction

11

of hours for review of Philips' work by Mr. Herr. Based upon my knowledge of prevailing rates in the community for the services of competent third and fourth year associates,[6] I will accept and incorporate this approach and reduce Ms. Philips' rate to $95 per hour.

Plaintiffs seek hourly rates for lawclerk and paralegal time at $60 and $65 per hour. Again, based upon my familiarity with fees for services for paralegals in this area, I conclude that this hourly rate should be reduced to $45.

Given these conclusions, the lodestar amounts for the various categories is as follows:

Attorney Philips—864.8 hours x $95 per hour results in a $82,156 fee

Attorney Herr— 625.9 hours x $165 per hour results in a $103,273.50 fee

Other attorneys — 0

Paralegals and lawclerks— 371.3 hours x $45 per hour results in a $16,708.50 fee

Following this initial reduction of $67,766 or 25%, we arrive at a figure of $202,138.

### 3. Other factors which may increase or decrease lodestar

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. at 435. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true

---

[6]*See Hardman v. Bd. of Educ. of Dollarway, Ark*., 714 F.2d 823, 825 (8th Cir. 1983).

even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id*.

In enacting §1988, Congress recognized that there is a value to society in vindicating civil rights, statutory and constitutional, that is very often greater than the monetary value of the claim to the individual. *Rivera*, 477 U.S. at 562. "Society as a whole profits from the vindication of civil rights even if a claim, no matter how meritorious, is a losing proposition economically for the aggrieved individual." *Grosvenor v. Brienen*, 801 F.2d 944, 946 (7th Cir. 196). The Supreme Court has "reject[ed] the proposition that fee awards under §1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers," *Rivera,* 477 U.S. at 575, because such a rule "would seriously undermine Congress' purpose in enacting §1988." *Id*. at 576.

A fee may be adjusted up or down depending on the degree of success obtained on the claims advanced. *Hensley*, 461 U.S. at 434. While no rule of proportionality exists, when the purpose of the lawsuit is to recover private damages, this comparison is highly relevant. *Farrar*, 506 U.S. at 114 (relying on *Rivera*, 477 U.S. at 585).

Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. *Hensley*, 461 U.S. at 440. But where a plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *Id.*

The Court should do a qualitative assessment regarding the relative importance of one claim versus another. *See Bangerter*, 61 F.3d at 1511 (holding that the court must demonstrate on the record its assessment of the losses (of plaintiff) in light of the time devoted to the litigation as to whole and the general overall success of plaintiffs). According to *Bangerter*, the district court must

13

make a determination as to what less-than-perfect results are "excellent," justifying full recovery, or to what extent plaintiffs' "limited success" should effect a reduction in the lodestar. *Id*.

It is undeniable that the jury did not find that defendants discriminated against Mr. Brasher because he had AIDS; this was a very significant portion of the lawsuit. Given my conclusion that Mr. Brasher's estate obtained only a partial or limited success in this lawsuit, an award of fees of more than $200,000 would be excessive, despite the fact that Mr. Brasher's claims were interrelated, were not frivolous, and were raised in good faith. I have struggled with this decision, and conclude that an award of something less than 50% of the $202,138 figure noted above, which has already been discounted to some extent, would be reasonable in relation to the results obtained. I conclude that the motivating reason for this lawsuit was the claim of discrimination and that it had relatively greater importance to Plaintiffs than that of retaliation. Having spent an incredible amount of time reviewing the timesheets of Mr. Brasher's attorneys, I conclude that a greater amount of effort was devoted to the discrimination claim. Accordingly, and I believe consistent with the approach approved by the Tenth Circuit in the *Bangerter* and other cases, I will approve a fee of $70,748.30. This is 35% of $202,138. I conclude that this amount is quite generous when compared with what these attorneys would receive if they were billing a paying client rather than being paid by court order. I conclude that while generous, it is nonetheless a reasonable amount, based on all of the circumstances of this case, in particular the vigorous and obstreperous manner in which it was defended.. *See Knop v. Johnson,*, 712 F. Supp. 571 (W.D. Mich. 1989)(court considered manner of defense in approving substantial lodestar and awarding enhancement).

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendants shall pay Plaintiffs' attorney fees inclusive of

14

gross receipts taxes, in the amount of $75,170.06.

_____
**UNITED STATES DISTRICT JUDGE**